UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| B.H., a minor child, by and through her natural parents and guardians, BILLIE AND JACKIE HOLDER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOLD FIELDS MINING CORPORATION, et al., <br><br> Defendants/Third Party Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Third-Party Defendants. | Case No. 04-CV-0564-CVE-PJC |

## OPINION AND ORDER

Now before the Court is the Motion of Defendants Gold Fields, Blue Tee and Doe Run[1] to Exclude Certain Testimony of Dr. Robert Lynch, and Brief in Support (Dkt. ## 527, 536).[2]

---

[1]  This motion is moot as to defendant The Doe Run Resources Corporation ("Doe Run"), because Doe Run has filed notice with the Court that it has agreed, in principle, to a settlement with plaintiffs.

[2]  The docket sheet incorrectly lists defendants' motion as an unopposed motion to exclude the testimony of Dr. Lynch. Dkt. # 536. Defendants' written motion, listed as an errata at Dkt. # 527, states that plaintiffs oppose this motion, and plaintiffs confirmed this at the Daubert hearing on January 5, 2007. In this Opinion and Order, the Court will refer to this motion using docket numbers 527 and 536, and will treat defendants' motion as an opposed motion in limine.

**I.**

Robert Lynch, Ph.D. ("Dr. Lynch"), is a professor of environmental science at the University of Oklahoma, and has spent 10 years studying the health problems associated with lead contamination in Picher, Oklahoma. Several mining companies, including the defendants in this case, funded a study of the Picher region called the Community Health Action Monitoring Program ("CHAMP") through the University of Oklahoma, and Dr. Lynch participated in CHAMP. Dr. Lynch was responsible for collecting and analyzing soil and dust samples. As part of that work, Dr. Lynch placed a plexiglass plate in specified locations and measured how much lead accumulated on the plate within an 8 hour period. Using this rate, he calculated how long it would take for lead to accumulate to a level of 40 ug/ft$^2$ (micrograms per square foot). He determined that lead would accumulate to this level in a period ranging from 11 to 800 days.

Dr. Lynch drafted a report called "Characterization of Dust Levels in Homes" examining the lead levels in the interior of 28 homes, as well as the levels of exterior leads levels at 36 homes. The stated purpose of the study was to "[b]etter understand the nature of dust contamination in homes." Dkt. # 527, Ex. 1, "Characterization of Dust Levels in Homes," at 1. Defendants assert that Dr. Lynch's findings were preliminary, and he has never sought peer review to validate these results. Defendants suggest that this was a limited study of 45 homes, and that Dr. Lynch abandoned his research before he finish the study. Plaintiffs respond that the study cited by defendants is simply one small portion of his research in the Tar Creek region, but that Dr. Lynch is well-qualified to state his opinions about the rate of lead contamination in and around homes. Plaintiffs cite several published articles co-authored by Dr. Lynch on the adverse effects of blood lead poisoning in children.

2

In <u>Herd v. Asarco, Inc.</u>, 01-CV-0891-SEH-PJC (N.D. Okla.), a similar case arising out of alleged lead contamination in the Tar Creek area by the same defendants, the plaintiffs also listed Dr. Lynch as a potential witness. See <u>Herd</u>, Dkt. # 586. The defendants deposed Dr. Lynch in preparation for trial in March 2003, but Dr. Lynch had not completed his study of the data gathered from his plate-collection samples. He indicated that he had not completely analyzed the contributing factors or variables that might affect lead accumulation rates. The defendants filed a motion in limine to exclude Dr. Lynch's testimony under <u>Daubert</u>, but that motion was denied.

In this case, plaintiffs listed Dr. Lynch on their preliminary witness and exhibit list as a potential expert witness, but Dr. Lynch did not produce an expert report pursuant to Fed. R. Civ. P. 26(a)(2). Plaintiffs included a footnote in the witness and exhibit list stating that "[w]itnesses with an '*' by their name may offer expert opinion testimony. However, none of these witnesses were required under Rule 26(a)(2) to provide expert reports because they have not been retained or specially employed to provide expert testimony in this case." Dkt. # 277, at 1. Plaintiffs placed an asterisk next to Dr. Lynch's name, indicating that plaintiffs treated him as a non-retained expert who was not required to produce an expert report. Defendants challenge this assessment, stating that "Dr. Lynch has been 'retained' to provide testimony, in that he has no knowledge of the facts of the underlying cases, and has been asked by Plaintiffs' counsel to provide testimony that falls within Rule 702." Dkt. # 628, at 3 n.1. Plaintiffs respond that they have not paid Dr. Lynch to retain his services, nor has Dr. Lynch been called to give any opinion outside of the scope of scientific research he has already conducted independently of this litigation.

### III.

Defendants have raised two objections to plaintiffs' proposed use of the expert testimony of Dr. Lynch. First, defendants claim that plaintiffs were required to provide an expert report pursuant to Fed. R. Civ. P. 26(a)(2) if they intended to use Dr. Lynch's testimony at trial. Second, defendants argue that Dr. Lynch's testimony should be excluded under Daubert and Fed. R. Evid. 702. At this time, the Court will rule on the first issue only and allow defendants to raise out of time any specific Daubert challenge to Dr. Lynch's proposed testimony.

### A.

Rule 26 requires a party to disclose the identity of any witness who may be called to provide expert testimony at trial. In addition to disclosing the identity of such witnesses, if a witness has been "retained or specially employed" to give expert testimony he must submit a report containing a complete statement of his opinions, the basis for his opinions, a list of any exhibits used to support his opinion, and his qualifications to testify as an expert. Fed. R. Civ. P. 26(a)(2)(B); Pena-Crespo v. Puerto Rico, 408 F.3d 10, 13 (1st Cir. 2005). A party's failure to disclose the identity of an expert witness or submit an expert report requires the Court to automatically exclude expert testimony unless the violation of Rule 26(a)(2) was justified or was harmless under the circumstances. Fed. R. Civ. P. 37(c)(1); Keach v. U.S. Trust Co., 419 F.3d 626, 639 (7th Cir. 2005); Woodworker's Supply, Inc., v. Principal Mutual Life Ins. Co., 170 F.3d 985, 992-93 (10th Cir. 1999). The expert report requirement does not apply if an expert is considered a "non-retained" expert, and he may testify without submitting an expert report. Bell v. Illinois Cent. R.R. Co., 2006 WL 3841544, *2-3 (S.D. Ill. Dec. 14, 2006); Williams v. Asplundh Tree Expert Co., 2006 WL 2868923, *7 (M.D. Fla. Oct. 6, 2006); Hoover v. United States, 2002 WL 1949734, *2 (N.D. Ill. 2002).

The commentary to rule 26 offers some guidance as to whether an expert should be treated as retained or specially employed. The 1993 amendments to Rule 26 state:

> The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report. By local rule, order, or written stipulation, the requirement of a written report may be waived for particular experts or imposed upon additional persons who will provide opinions under Rule 702.

1993 Advisory Committee Notes to Fed. R. Civ. P. 26. The drafters of Rule 26 clearly did not intend for every expert witness to produce an expert report, nor is the category of non-retained experts limited to treating physicians. However, the 1993 amendments to Rule 26 clearly favor disclosure of the contents of expert testimony before trial to prevent a party from being ambushed with surprise expert testimony at trial. Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995); Minnesota Min. and Mfg. Co. v. Signtech, USA, Ltd., 177 F.R.D. 459 (D. Minn. 1998); Day v. Consolidated Rail Corp., 1996 WL 257654, *2 (S.D.N.Y. May 16, 1996).

In this case, plaintiffs listed Dr. Lynch as a possible expert witness on their preliminary witness and exhibit list and stated that he would testify about CHAMP, TEAL, and other research projects in Ottawa County. Defendants argue that plaintiffs failed to provide an expert report for Dr. Lynch at their peril, because defendants did not waive their right to challenge Dr. Lynch's status as a retained or specially employed expert. Defendants do not dispute that plaintiffs made a timely disclosure of their intention to call Dr. Lynch as an expert witness. However, defendants claim that Dr. Lynch has been "retained" to provide testimony, even though plaintiffs have not paid Dr. Lynch to testify in this case.

Defendants rely on a ruling in a related case, Herd v. Asarco, Inc., 01-CV-0891-SEH-PJC (N.D. Okla.), where the magistrate judge held that Herbert Needleman, M.D., could not offer expert testimony because plaintiffs failed to identify him as an expert on their preliminary witness list and did not provide an expert report. Herd, Dkt. # 361, at 4-5. In Herd, the plaintiffs intended to call Dr. Needleman to offer expert testimony about: "(1) hazards and health effects of lead; (2) research concerning the adverse health effects of lead on children; and (3) the lead industry's response." Id. at 3. The plaintiffs claimed that they did not pay Dr. Needleman for expert services and, therefore, he was not a retained expert. The magistrate judge found that the critical inquiry was not whether plaintiffs intended to pay Dr. Needleman for his services, but the nature of Dr. Needleman's proposed testimony. Dr. Needleman did not have personal knowledge of the facts related to plaintiffs' case, but would be testifying solely as an expert based on his studies in the Tar Creek region. The magistrate judge ruled that he was retained to testify on plaintiffs' behalf, even though he was not paid for his services, and he also found that defendants would be prejudiced by the untimely addition of Dr. Needleman to plaintiff's final witness list.

Dr. Lynch is a professor at the University of Oklahoma who was hired through the CHAMP program to conduct research at Tar Creek. He began his research as part of CHAMP in 1996, almost 8 years for this case was filed. Defendants argue that the Court should not consider the status of the witness but, instead, should focus on "the substance and/or the scope of the testimony." Cinergy Communications Co. v. SBC Communications, Inc., 2006 WL 3192544, *3 (D. Kan. 2006); Sellers v. Butler, 2006 WL 2714274, *3 (D. Kan. 2006). Plaintiffs respond that Dr. Lynch formed his opinions in the normal course of his work, and he would not be testifying as a retained expert. See Bank of China v. NBM LLC, 359 F.3d 171, 182 (2d Cir. 2004); Full Faith Church of Love West,

6

Inc. v. Hoover Treated Wood Products, Inc., 2003 WL 169015, * 2 (D. Kan. 2003). Although evidence that a party was not paid to testify suggests he was not retained, this fact alone is not dispositive of the issue. Brown v. Best Foods, 169 F.R.D. 385, 388 n.3 (N.D. Ala. 1996). A key factor in the Court's consideration is how plaintiffs' counsel initially formed a relationship with the witness, such as whether the witness was asked to reach an opinion in connection with specific litigation. Kirkham v. Societe Air France, 236 F.R.D. 9, 12 (D.D.C. 2006).

On the continuum of expert testimony, Dr. Lynch more closely resembles a treating physician than a retained expert. Defendants have presented no evidence that Dr. Lynch routinely provides expert services as part of his work or that he reached any opinion specifically in connection with this litigation. Prieto v. Malgor, 361 F.3d 1313, 1318-19 (11th Cir. 2004) (finding that an employee was a retained expert because he had no personal knowledge of the facts and routinely gave expert testimony on behalf of his employer). He has not received any compensation for giving an opinion in this case, nor does it appear that he will be paid for testifying at trial. The nature of his testimony is clearly that of an expert witness, but this does mean that he was retained as an expert on behalf of either party. This situation is different from the situation presented by Dr. Needleman's testimony in Herd, because Dr. Needleman was offered as a witness to support the credibility of plaintiffs' other experts against attacks from the mining defendants.[3] Although Dr. Lynch's opinions may be harmful to defendants, he has not been asked to testify to support the credibility of plaintiffs' retained experts, as Dr. Needleman was in Herd. In summary, there is no basis for the Court to conclude, from nature of Dr. Lynch's proposed testimony or the circumstances

---

[3] The plaintiffs in Herd committed a separate violation of Rule 26 by failing to list Dr. Needleman as an expert, and this was a key consideration in the magistrate judge's decision to exclude Dr. Needleman from testifying at trial.

leading to his identification on plaintiffs' preliminary witness list, that he was "retained or specially employed" to testify as an expert in this case. The Court finds that Dr. Lynch should be treated as a non-retained expert who was not required to submit an expert report pursuant to Fed. R. Civ. P. 26(a)(2).

**B.**

Even though the Court has found that Dr. Lynch was not required to submit an expert report pursuant to Fed. R. Civ. P. 26(a)(2), the Court finds that a report would be helpful for it to carry out the gatekeeper function under Daubert. At the Daubert hearing, it became clear that neither party could present a meaningful argument concerning the substance of Dr. Lynch's testimony without some form of pretrial disclosure of the substance of his testimony. The commentary to Rule 26(a)(2) states that, "[b]y local rule, order, or written stipulation, the requirement of a written report may . . . be imposed upon additional persons who will provide opinions under Rule 702." The stated purpose of expert disclosures under Rule 26 is to "disclose information sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Id. The status of a witness as retained or non-retained does not reduce an opposing party's need to prepare for cross-examination at trial, nor does it relieve the Court of its duties as a gatekeeper under Daubert. See Griffith v. Northeast Illinois Reg'l Commuter R.R., 233 F.R.D. 513, 517 (N.D. Ill. 2006) ("The lack of any apparent foundation for the type of opinions Dr. Stamelos expressed is a problem not only for the opposing party . . . but also for the court.").

The Court finds that Dr. Lynch should submit an expert report disclosing the substance of his expert opinions that he intends to give at trial. For the benefit of defendants and the Court, some

8

sort of expert report is necessary to evaluate the reliability of Dr. Lynch's testimony before trial. The Court recognizes that Dr. Lynch is non-retained expert who would normally not be required to provide an expert report. Unlike the example of a treating physician referenced in Rule 26, who would testify based on medical records, tests, and examinations available to both parties, there is no basis to determine the contents of Dr. Lynch's testimony. <u>Osterhouse v. Grover</u>, 2006 WL 1388841, *3 (S.D. Ill. 2006) (requiring expert report for treating physician to the extent his testimony exceeds his observations, diagnosis and treatment discussed in medical records). Dr. Lynch's testimony will, at least in part, be based on the results of a study that have not been published or peer-reviewed, and defendants will not have an opportunity to prepare a meaningful cross-examination or bring a <u>Daubert</u> challenge without some disclosure of his proposed expert testimony.

The Court orders that Dr. Lynch submit to the Court and counsel for all parties a concise report containing a complete statement of his opinions, the basis and reasoning supporting them, and the data or information he reviewed when reaching his opinions. **Plaintiffs will be responsible for serving Dr. Lynch with a copy of the Court's Opinion and Order no later than January 16, 2007. Dr. Lynch must file and serve a report disclosing the substance of his proposed testimony and the basis for his opinions by January 26, 2007. If defendants choose to challenge Dr. Lynch's testimony under <u>Daubert</u>, they may file a motion in limine out of time, but no later than February 2, 2007. Plaintiffs should respond no later than February 7, 2007. The Court will hear oral argument, if any is required, at the pretrial conference on February 8, 2007.** If either side believes the testimony of Dr. Lynch is required, it may be presented at the pretrial conference.

**IT IS THEREFORE ORDERED** that the Motion of Defendants Gold Fields, Blue Tee and Doe Run to Exclude Certain Testimony of Dr. Robert Lynch, and Brief in Support (Dkt. # 527, 536) is **denied** at this time.

**DATED** this 11th day of January, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT