UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| B.H., a minor child, by and through her natural parents and guardians, BILLIE AND JACKIE HOLDER, et al., <br><br>    Plaintiffs, <br><br>v. <br><br>GOLD FIELDS MINING CORPORATION, et al., <br><br>    Defendants/Third Party Plaintiffs, <br><br>v. <br><br>UNITED STATES OF AMERICA, et al., <br><br>    Third-Party Defendants. | Case No. 04-CV-0564-CVE-PJC |

## OPINION AND ORDER

Now before the Court are the following appeals from the magistrate judge's rulings on motions in limine: Defendants' Objection to [Appeal of] Magistrate Ruling on Motion in Limine to Exclude Tri-State Lead, Zinc & Ore Producers Association Documents (Dkt ## 734, 757); Defendants' Objection to [Appeal of] Magistrate Ruling on Motion in Limine to Exclude Discussions of Punitive Damages Prior to the Court Finding Liability and for the Exclusion of Certain Categories of Evidence on Due Process Grounds (Dkt. # 735); and Defendants' Objections to [Appeal of] Magistrate Ruling on Motion in Limine to Exclude Motion [sic] of Defendants to Exclude Certain Videotapes and Photographs (Dkt. # 736).

The same standard of review applies to each appeal. Federal magistrate judges may hear and determine any pretrial matter that is not dispositive of the case and must enter a "written order

setting forth the disposition of the matter." 28 U.S.C. § 636(b)(1); <u>Phillips v. Beierwaltes</u>, 466 F.3d 1217, 1222 (10th Cir. 2006). Fed. R. Civ. P. 72(a) provides that an order of the magistrate judge on a pretrial matter that is not dispositive shall be set aside or modified only if the order is found to be clearly erroneous or contrary to the law.

**I.**

Defendants appeal the magistrate judge's ruling denying their motion in limine to exclude three letters from the Tri State Zinc & Lead Ore Producers Association ("Tri-State Association"). These letters refer to surface dust from chat piles as a nuisance, and defendants claim the jury will assume the letters refer to a legal definition of nuisance.

The Tri-State Association was organized by lead and zinc mining companies in 1923 to promote the interests of member companies. Defendants do not dispute that the predecessor companies to Gold Fields Mining Corporation ("Gold Fields") and Blue Tee Corp. ("Blue Tee") belonged to the Tri-State Association.[1] Defendants assert that the Tri-State Association served several functions, including gathering information on the mining industry, lobbying for new regulations or legislation, and sponsoring education and philanthropic activities. Plaintiffs have identified several letters from the Tri-State Association to its members as potential exhibits at trial, and defendants object to the admission of three letters.

These three letters were written in 1939 by Evan Just, secretary of the Tri-State Association, to other members of the association. In a letter dated February 21, 1939, Just wrote:

> We firmly believe that most of the surface dust, day in and day out, is due to our chat roads, which are not a responsibility of this industry. Some dust arises from the

---

[1]  Blue Tee is successor to American Zinc, Lead & Smelting Company. Gold Fields is successor to Tri-State Zinc, Inc.

>roads constantly, while other sources, such as sand piles, only contribute on windy days. Nevertheless, the dust from sand piles and slimes is a nuisance and is a constant source of agitation and discontent.

Dkt. # 734, Ex. 1(A), at 1. The letter concludes by stating that "it is far better for us to abate our nuisances voluntarily than to wait until we are compelled to do so by public officials." Id. The second letter to which defendants object was written on April 8, 1939. Addressing the lack of cooperation to abate dust from sand piles, Just suggested that "[t]hose operators who fail to clean up their contributions to this nuisance are making that task very difficult." Dkt. # 734, Ex. 1(B), at 1. On November 18, 1939, Just wrote to members to discuss proposed monitoring operations by the state departments of health in Oklahoma and Kansas. Just stated his approval for the monitoring because he was certain that "that this investigation will be competently and fairly made and that it will prove these frequent complaints to be unfounded -- that surface dust from our tailings piles and slime ponds constitute a health menace."

Defendants argue that the letters should be excluded under Fed. R. Evid. 403, because their prejudicial impact greatly outweighs their probative value. Defendants claim that the letters use the word "nuisance" in an informal context instead of the legal concept of nuisance that plaintiffs will have to prove at trial. They argue that the admission of these letters will confuse the jury, and that any resulting prejudice can not be cured with a limiting instruction. The magistrate judge had concerns about the prejudicial effect of the word "nuisance," but felt that it would be improper to exclude the letters before trial. He found that it would be difficult to weigh the prejudicial impact of the evidence against its probative value until trial, because plaintiffs had not determined exactly what evidence they will use to prove causation at trial. His denial of defendants' motion was conditional, as a review of the transcript shows:

3

> So I think that issue can be revisited obviously at the time of trial. If it turns out at trial that there is -- that any further evidence such as this is -- would have minimal relevance or impact for the jury, and at that point that the prejudicial impact is so much clearer, I think it is an issue that's worth revisiting.
>
> I don't think this can be the primary source of plaintiffs' argument of wind dispersion, and I certainly don't expect that it will be. So I would just caution you in that regard, that while I'm denying the motion, I think there is an argument to be made, but I would have to await a later date as to what exactly is the probative value of these documents and how does that stack up against the prejudicial affect as the issue arises at trial.

Dkt. # 735, Ex. 5, at 148-49.

Defendants make several factual arguments in an attempt to prove that the letters have little relevance for plaintiffs' case-in-chief. They argue that plaintiffs were not even born in 1939, and the letters have no relevance to any injury suffered by plaintiffs. The letters do not prove that defendants engaged in any improper activity, but simply that the Tri-State Association was concerned about the failure of several unnamed operators to abate a potential nuisance. They also argue that the letters are not relevant because, even though the letters mention dust dispersing from chat piles, they do not prove that lead dust was blown off chat piles owned by defendants. Balanced against the prejudicial impact of the words "nuisance" and "health menace," defendants argue that any minimal relevance is significantly outweighed by the prejudicial value of the evidence and the evidence must be excluded before trial to prevent prejudice to defendants.

Under Fed. R. Evid. 401, relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence can be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." Fed. R. Evid. 403. When considering a Rule 403 challenge,

the court should "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Mendelsohn v. Spring/United Management Co., 466 F.3d 1223, 1231 (10th Cir. 2006) (quoting Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000)). Exclusion of evidence under Rule 403 is an extraordinary remedy that should be used sparingly. World Wide Ass'n of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1139 (10th Cir. 2006); Cadena v. Pacesetter Corp., 224 F.3d 1203, 1214 (10th Cir. 2000); Joseph v. Terminex Int'l Co., 17 F.3d 1282, 1284 (10th Cir. 1994).

The Court finds that it would be premature to exclude the letters as prejudicial under Rule 403. The letters clearly have some relevance to plaintiffs' nuisance claim, specifically the element of causation. Defendants' predecessors were members of the Tri-State Association and these letters suggest that defendants knew or should have known of complaints of dust blowing from chat piles and tailings ponds. At least one of the letters specifically references surface dust from tailings ponds, which is relevant to plaintiffs' theory of causation. Plaintiffs state that they may not use the letters as exhibits at trial, because the evidence may be cumulative. Given this uncertainty, the magistrate judge's conditional ruling was appropriate. The undersigned has similar concerns about potential jury confusion from the misleading use of the word "nuisance" in the letters. However, defendants have not yet shown that the probative value of the letters is substantially outweighed by the prejudicial impact, and a limiting instruction might cure any prejudice that would result from plaintiffs' use of the letters at trial. Therefore, the magistrate judge's conditional ruling denying defendants' motion in limine should be affirmed. However, defendants may renew their objection when and if the letter(s) are offered during trial.

**II.**

The magistrate judge denied defendants' motion to exclude any reference to punitive damages during the first stage of trial and defendants' request to exclude certain categories of evidence under the Supreme Court's decision in State Farm Mutual Automobile Insurance Company v. Campbell, 538 U.S. 408 (2003). Plaintiffs respond that defendants' appeal to preclude any discussion of punitive damages is moot, because the Court has informed the parties that the jury will hear plaintiffs' punitive damages claim, if at all, during a separate stage of the trial. Concerning defendants' second argument, plaintiffs request that the Court refer to Judge Sven Erik Holmes' ruling denying a similar motion in limine in Herd v. Asarco, Inc., Case No. 01-CV-0891-SEH-PJC (N.D. Okla.).

Defendants' first argument concerns the admissibility of punitive damages evidence during the presentation of plaintiffs' case-in-chief. At the Daubert hearing on January 4, 2007, the Court notified the parties that the trial would be divided into two stages and gave the following admonition on the issue of punitive damages:

> First of all, nobody uses the word "punitive" or "punished" during Phase I. The jury will only hear issues relating to liability for actual damages. And if appropriate, the jury will be given an interrogatory to answer with regard to the conduct of the defendants, if appropriate. And based upon that answer, then and only then would we go to Phase II.

Dkt # 750, at 187. Plaintiffs characterize the Court's procedure merely as a prohibition on the mention of punitive damages, but claim that they are "free to present evidence of conduct to support liability for a punitive damages claim." Dkt. # 744, at 4 n.3. Plaintiffs are correct. The Court was explicit that the words "punitive damages," "punish" or "send a message" and the like are not to be mentioned during phase one, and the jury would hear evidence related to plaintiffs' claim for actual

damages only, <u>including</u> the conduct of the defendants at Tar Creek. Absent evidence of conduct, the jury would be unable to answer an interrogatory regarding such conduct. However, evidence admitted during phase one must have some bearing on plaintiffs' claim for actual damages (i.e., be related to these plaintiffs and Tar Creek).

Defendants argue that plaintiffs have not disputed the due process framework for the admission of punitive damages evidence outlined in defendants' motion in limine. According to defendants, a constitutionally permissible award of punitive damages must arise out of conduct:

1. with a proven "nexus to the specific harm suffered by the plaintiff" (*see Campbell*, 538 U.S. at 422; *see also Newport v. USAA*, 11 P.3d 190, 204 (Okla. 2000) (requiring that conduct giving rise to punitive damages be a proximate cause of the harm inflicted));

2. occurring within the state in which the claim for punitive damages is asserted (*Campbell*, 538 U.S. at 422);

3. shown to have been "reprehensible" under a five factor test crafted by the Supreme Court (*see Campbell*, 538 U.S. at 419; *see also BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996); 23 O.S. § 9.1; and

4. occurring contemporaneously to plaintiffs' actual damages (not afterwards) (*see Marshall v. El Paso Natural Gas Co.*, 874 F.3d 1373, 1381 (10th Cir. 1989)).

Dkt. # 735, at 4. In the Court's ruling on defendants' motion for summary judgment, the Court noted its concern about the evidence plaintiffs cited in the summary judgment record.

After reviewing the cases cited by defendants, the Court finds that defendants' framework overstates plaintiffs' burden. Under <u>Campbell</u>, plaintiffs may introduce evidence of defendants' out of state conduct if it "demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a nexus to the specific harm suffered by plaintiff." 538 U.S. at 422. Out of state conduct may often be excluded under <u>Campbell</u>, but

7

exclusion is not automatic. Diesel Machinery, Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 839 (8th Cir. 2005) (court should instruct the jury on the limited use of out of state evidence rather than exclude this category of evidence entirely); Gonda v. Metropolitan Life Ins. Co., 2006 WL 2037482 (W.D. Pa. June 29, 2006) ("there is no blanket prohibition on out-of-state conduct to establish entitlement to punitive damages. Rather, so long as a nexus exists between the harm inflicted within the forum state, and [ ] out-of-state conduct, then such evidence is permissible."); Markham v. National States Ins. Co., 2004 WL 3019309 *5 (W.D. Okla. Dec. 27, 2004) (Campbell does not apply when plaintiff relies on out of state evidence in support of claim for actual damages). It would be premature to exclude all out of state evidence because, under Campbell, some of this evidence may be admissible at trial.

Defendants suggest that Campbell creates a heightened relevance standard for the admission of evidence relating to punitive damages. Campbell specifies that a defendant "should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." 538 U.S. at 423. However, defendants are confusing post-trial review of an award of punitive damages with admissibility of evidence. In Campbell, the Supreme Court listed five factors a court should consider in reviewing a jury's punitive damages verdict:

> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

Id. at 419. These factors apply to post-trial review of a jury's verdict, not the admissibility of evidence. Clark v. Chrysler Corp., 436 F.3d 594, 600-01 (6th Cir. 2006); Willow Inn, Inc. v. Public

8

Serv. Mut. Ins. Co., 399 F.3d 224, 232 (3d Cir. 2005). Defendants' framework for the admissibility of evidence is not supported by the case law.

The Court will not set forth herein explicit guidelines for the admissibility of evidence in each phase of the trial. Punitive damages and similar terms will not be discussed during the first phase of trial, and defendants' concern may be moot if the jury does not find that defendants acted with reckless disregard of the safety of others. Without specific evidence offered in the context of the trial, the Court can not rule in a vacuum.[2] Therefore, the magistrate judge's order is affirmed, without prejudice to renewal of objections to evidence at trial.

### III.

Defendants argue that it was clear error for the magistrate judge to deny their motion in limine concerning the admissibility of two videotapes and 14 photographs shot by John Sparkman, a resident of the Tar Creek area. Defendants raise several objections to admission of the videotapes, including relevance, authenticity, lack of foundation, and unfair prejudice. Sparkman made home videotapes of dust blowing near Picher, Oklahoma on April, 11, 2001 ("Sparkman 1) and February 19, 2004 ("Sparkman 2"), and took 14 photographs on a windy day in Picher showing wind and dust blowing in Picher. Defendants claim that the videotapes and photographs do not depict the usual conditions in Picher, and will mislead the jury. Plaintiffs respond that all of defendants' evidentiary objections are more properly the subject of cross-examination, and exclusion of the videotapes or photographs would be improper.

---

[2]   The Court will address any further procedural issues relating to plaintiffs' claim for punitive damages at the pretrial conference.

The magistrate judge denied defendants' motion in limine to exclude Sparkman 1 and 2 and photographs taken by Sparkman. He held that plaintiffs could use Sparkman 1 and 2 as demonstrative evidence if they felt it would advance their case, because the evidence was not unfairly prejudicial under Fed. R. Evid. 403 and exclusion of the videotapes would interfere with plaintiffs' control over their own case. With regard to defendants' objections that the videotapes do not prove that there was lead in the dust and technical objections to the recording equipment, the magistrate judge stated:

> Mr. Joyce, you said that this doesn't advance the ball in terms of whether there is lead in the dust, but I think they are entitled to prove their case by showing first that there is dust and then they are going to have to connect it up with expert opinion or other opinion that indicates that there is in fact lead present in that dust. And if they can't do that, then of course they have run the risk of failing on their evidence in that regard.
>
> All of the issues with respect to, you know, the focus and the conditions under which it were taken I think are appropriate for cross-examination.

Dkt. # 736, at 219-220. The magistrate judge ordered plaintiffs to submit edited versions of the videotapes 30 days before trial, limited to depiction of wind and dust within close proximity of Picher and Cardin.

Defendants allege that Sparkman 1 does not depict normal weather activity in Picher, Oklahoma. They also argue that the videotape was taken with unreliable equipment, and will create a misleading impression with the jury about how much dust is blowing. Sparkman admitted that he borrowed the camera from a friend and did not know any of the technical specifications for the equipment. He admits that there was a problem with the video camera, because he noticed a brown spot in the film that coincides with his movement of the camera. However, defendants have not cited any law that technical deficiencies with the recording equipment requires the Court to exclude

10

the videotape. Under Tenth Circuit precedent, when a party seeks to introduce a videotape, he can authenticate the evidence by establishing that the tape accurately depicts the events illustrated in the recording. Fed. R. Evid. 901; United States v. Mills, 194 F. 3d 1108, 1111-12 (10th Cir. 1999). Plaintiffs state that Sparkman can testify that the videotape accurately depicts weather conditions that existed at the time the videotape was taken. This will be sufficient to authenticate the videotape and, if plaintiffs lay a sufficient foundation, plaintiffs will be permitted to show a selection from the videotape.[3]

Defendants also assert that the videotape shows blowing dust, but Sparkman 1 does not support plaintiffs' claims that the dust contained lead. Defendants argue that plaintiffs must lay a foundation that the dust in the videotape contains lead before it will be admissible. However, this overstates plaintiffs' burden. Under Fed. R. Evid. 401, plaintiffs must show that the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Plaintiffs' theory of causation is that wind carried dust from chat piles and tailings ponds, and this caused the resulting lead contamination of Tar Creek. Although it is implicit in this theory that the dust contained lead, every piece of evidence does not have to be relevant to every element of causation to be admissible. It is sufficient that the videotape shows dust blowing from the chat piles. Plaintiffs have identified

---

[3] The videotape includes approximately two hours of footage. While the defendants are justifiably concerned that showing the full two hours of videotape to the jury would be cumulative, plaintiffs have agreed to edit the videotape to ten minutes in length.

experts who can testify to the presence of lead in the dust, and Sparkman 1 can be linked to this expert testimony.[4]

Sparkman 2 is more problematic, but the magistrate judge's order addresses the Court's concerns with this videotape. Sparkman shot this videotape on February 19, 2004 for the express purpose of showing the videotape to Senator James M. Inhofe. Sparkman believed that Senator Inhofe was directing federal funds to the wrong locations in Tar Creek, and Sparkman wanted to show Senator Inhofe that other areas were more in need of federal aid. Sparkman's criticisms of Senator Inhofe would not be relevant to any issue in the case, but plaintiffs have agreed to edit the videotape to delete any of Sparkman's political commentary. Defendants argue that much of the videotape was taken south of Picher and Cardin, and it should be excluded to prevent the jury from forming a false impression about the wind conditions where plaintiffs reside. However, some of the videotape depicts areas less than a mile from plaintiffs' homes, and the magistrate judge ordered plaintiffs to edit the videotape to show areas near Picher and Cardin only. This addresses defendants' concerns and the magistrate judge did not commit clear error by permitting plaintiffs' to introduce an edited version of Sparkman 2.

Defendants raise similar issues regarding 14 photographs taken by Sparkman. They argue that plaintiffs have no evidence about the moisture level of the chat piles, that the wind events in the pictures were unusual, that there is no evidence that the dust contained lead, that the photographs are cumulative, and that plaintiffs have not shown that the camera was working properly. While

---

[4] Defendants cite expert testimony from their expert, Peter J. Drivas, Ph.D., who relies on the National Ambient Air Quality Standard for the proposition that dust from chat piles does not contain lead. While this is clearly a relevant cross-examination point, this does not preclude the admission of Sparkman 1.

these are all good cross-examination points, they do not go to the admissibility of the Sparkman photographs. If Sparkman can testify that the pictures accurately represent the weather events depicted, the pictures should be admitted. United States v. Wilson, 719 F.2d 1491, 1495 (10th Cir. 1983). The magistrate judge did not err by denying defendants' motion in limine on this issue.

Defendants also claim that the magistrate judge erred by deferring a ruling on the admissibility of footage containing sound. The Sparkman videotapes include commentary about the wind events and political commentary about the cleanup of Tar Creek. Regarding Sparkman 2, plaintiffs have indicated they will redact political commentary, and this issue is moot. The magistrate judge did not commit clear error by deferring these issues for consideration by the trial judge, and his decision is affirmed.[5]

**IT IS THEREFORE ORDERED** that Defendants' Objection to [Appeal of] Magistrate Ruling on Motion in Limine to Exclude Tri-State Lead, Zinc & Ore Producers Association Documents (Dkt ## 734, 757) is **denied**; Defendants' Objection to [Appeal of] Magistrate Ruling on Motion in Limine to Exclude Discussions of Punitive Damages Prior to the Court Finding Liability and for the Exclusion of Certain Categories of Evidence on Due Process Grounds (Dkt. # 735) is **denied;** Defendants' Objections to [Appeal of] Magistrate Ruling on Motion in Limine to Exclude Motion [sic] of Defendants to Exclude Certain Videotapes and Photographs (Dkt. # 736) is **denied**. All of these rulings of the magistrate judge are affirmed.

**DATED** this 1st day of February, 2007.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5]   Plaintiffs are directed to bring edited versions of Sparkman 1 and 2 to the pretrial conference.